UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. 7: 14-015-DCR |
| | ) | and |
| V. | ) | Civil Action No. 7: 16-176-DCR |
| | ) | |
| ERIC WILLIAMS, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Movant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Eric Williams was sentenced to 137 months in prison after pleading guilty to voluntary manslaughter in violation of 18 U.S.C. § 1112.  [Record No. 41]  The defendant did not file a direct appeal, and his conviction became final on July 10, 2015. [1]  On July 21, 2016, Williams filed a *pro se* motion for an extension of time to file a motion to vacate, correct, or set aside his sentence under 28 U.S.C.§ 2255.  Because Williams did not include his § 2255 motion or provide significant information regarding the basis of the motion, the motion for an extension of time was denied.  [Record No. 45]  On August 9, 2016, Williams filed a § 2255 motion, alleging that his constitutional rights to the effective assistance of counsel and due process had been violated.[2]

---

[1] Judgment was originally entered on May 1, 2015 [Record No. 36], but an Amended Judgment was entered on June 25, 2015 [Record No. 41] to correct a clerical error.  Williams' conviction became final upon expiration of the time for filing an appeal from that judgment.  *See Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004).  *See also* F.R.A.P. 4(b)(A)(i) (notice of appeal must be filed within 14 days after the entry of judgment).

[2] Motions for relief under section 2255 generally must be filed within one year of the date on which the judgment of conviction became final.  *See* 28 U.S.C. § 2255(f).  Although equitable tolling does not apply here, *see Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001),

Consistent with local practice, Williams' § 2255 motion was referred to a United States Magistrate Judge for review and issuance of a report pursuant to 28 U.S.C. § 636(b)(1)(B).  On November 11, 2016, United States Magistrate Judge Candace Smith recommended that Williams' motion be denied.  [Record No. 70]

Rule 72(b)(2) of the Federal Rules of Civil Procedure provides that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."  The district judge is required to review *de novo* any part of the magistrate judge's disposition to which *proper* objections have been filed.  Fed. R. Civ. P. 72(b)(3) (emphasis added).  Williams' objections are largely general and serve as an attempt reargue his § 2255 motion.  Regardless, the Court has examined his claims *de novo* and agrees with the magistrate judge's recommendation.

## I.    Background

The underlying events occurred at USP Big Sandy in Inez, Kentucky, where the defendant was serving a sentence for an unrelated conviction.  At approximately 3:00 p.m. on December 2, 2013, inmates Gregory Kittle and Denardo Hopkins became involved in a dispute after Kittle demanded that Hopkins stop playing cards and come to his cell.  Inmate Kamau Blakney interceded in the dispute and all three went to Kittle's cell.  Defendant Williams followed the three to Kittle's cell, but remained outside and watched events unfold through the cell door.  As Kittle and Hopkins began fighting, Blakney exited the cell.  At that point, the defendant entered the cell to join the defense of Hopkins, who was considerably smaller in

---

the United States has waived any statute of limitations argument by failing to raise it in response to Williams' motion.  *See Armstrong v. United States*, 107 F. App'x 522 (6th Cir. 2004).

stature than Kittle.  As the fight progressed, the defendant produced a homemade shank and began stabbing Kittle.  In the heat of the battle, the defendant stabbed Kittle in the neck, which ruptured his carotid artery.

As Kittle lost blood, he became unable to fight.  The defendant and Hopkins went back to their cell where they washed Kittle's blood from their bodies and attempted to flush the shank down the toilet.  Kittle was transported to a local hospital where he died that afternoon. Medical examinations performed after the fight revealed that neither the defendant nor Hopkins had any significant injuries or stab or puncture wounds.[3]

## II.      Ineffective Assistance of Counsel

Williams contends that his trial counsel, Andrew Stephens, was constitutionally deficient for several reasons.  To succeed on this claim, Williams must show that Stephens' representation "fell below an objective standard of reasonableness" and that he was prejudiced by Stephens' representation.  *Mukherjee v. United States*, 568 F. App'x 395, 397 (6th Cir. 2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)).  Stated differently, he must demonstrate that, but for Stephens' putative errors, the result of his proceeding would have been different.  *See id.*  In the context of guilty pleas, the prejudice requirement focuses on whether counsel's purportedly ineffective performance affected the outcome of the plea process.  *See Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985).

### A.      Failure to Interview Kamau Blakney

While Williams claims that his attorney rendered ineffective assistance by failing to interview Kamau Blakney, he has not satisfied either prong of the *Strickland* standard.

---

[3] This fact summary is based on the defendant's plea agreement.  [Record No. 33, ¶ 3]

Williams argues that Blakney could have testified that Kittle actually brandished the shank used in the stabbing and that Williams simply disarmed him in self-defense. However, the record shows that Stephens' decision not to interview Blakney was not unreasonable under the facts presented and that the absence of Blakney's testimony could not have prejudiced Williams' defense.

Stephens provided an affidavit in response to Williams' section 2255 motion, which revealed that he investigated Blakney's involvement in the events. [Record No. 65–1] After reviewing video footage of the altercation "time and time again," Stephens knew that Blakney was not present during the fight and was unlikely to possess valuable information. Stephens' belief is supported by Blakney's affidavit, which states simply that he would have "cooperated." [Record No. 61] While Blakney indicated that he would have provided an account of what he witnessed, he did not provide any details as to what those events were. *Id.*

Further, during Williams' plea hearing, he was asked to state, in his own words, what he had done to be guilty of voluntary manslaughter. He responded that he "had a knife on [him]" and that he killed someone after getting into a fight. [Record No. 60, p. 31] The Court questioned Williams more extensively about the knife: "You said you had a knife on you. Was it something you made, that you had in your possession?" Williams responded: "Yes, sir." *Id.* at 32.

There is no indication that counsel's decision not to interview Blakney, who had been transferred to a facility in West Virginia, was anything other than a strategic choice made after a reasonable investigation. Although Williams now suggests that Blakney was present when he and Kittle began to fight, he agreed to a contrary version of the facts pursuant to his plea agreement. Representations made in open court at a plea hearing constitute a "formidable

barrier in any subsequent collateral proceedings" and "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).  Further, because there is no indication that Blakney possesses any information that could have impacted Williams' decision to plead guilty, he has not been prejudiced by Stephens' failure to interview Blakney.

### B.       Rule 11(c)(1)(C) Plea Agreement

Williams also argues that trial counsel was constitutionally ineffective for failing to obtain a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), capping his sentence at eight years.  While a defense attorney's failure to notify his client of a prosecutor's plea offer may constitute ineffective assistance of counsel, there is no suggestion that the United States offered a plea agreement under Rule 11(c)(1)(C).  *See Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003).  In fact, as the magistrate judge noted, the United States has explained that it would have rejected a binding plea capping Williams' sentence at eight years. [Record No. 70, p. 17]  *See Moore v. Haas*, No. 2: 13-CV-12225, 2013 WL 5819593, at *5 (E.D. Mich. Oct. 29, 2013) (counsel cannot be ineffective for failing to obtain a conditional plea under Rule 11(a)(2) unless movant can show "that counsel could have successfully negotiated such plea agreement").

Even assuming parties make such an agreement, there is an additional barrier—it must be accepted by the Court.  *See* Fed. R. Crim. P. 11(c)(1)(C).  *See also United States v. McNeese*, 819 F.3d 922, 926 (6th Cir. 2016).  Accordingly, Williams has failed to demonstrate that counsel's failure to negotiate a plea agreement under Rule 11(c)(1)(C) constituted deficient performance, or that it prejudiced his defense.

### C.    5K2.10 Motion

At sentencing, counsel successfully moved for a downward departure under U.S.S.G. § 5K2.10 based on Kittle's conduct, which resulted in a one-level reduction in Williams' offense level.  [Record No. 64, p. 17]  Based on hindsight, Williams in not satisfied that result. He contends that Stephens' assistance was ineffective because, had he presented evidence of Kittle's aggressive history, Williams could have received a greater reduction under section 5K2.10.  [Record No. 46, p. 8]

Section 5K.210 of the Sentencing Guidelines provides the following factors to consider in determining whether a reduction of sentence is warranted: (1) the size and strength of the victim, compared to the defendant; (2) the persistence of the victim's conduct; (3) the danger reasonably perceived by the defendant; (4) the danger actually presented to the defendant; (5) any other relevant conduct by the victim; and (6) the proportionality and reasonableness of the victim's response.

The transcript from the sentencing hearing reveals that the court considered all of these factors.  [Record No. 64, pp. 16–17]  Williams suggests that counsel should have presented evidence of Kittle's propensity for violence, but he fails to identify any particular evidence that should have been introduced.  Further, it appears that any such evidence would have been cumulative.  The United States agreed that Kittle had a significant reputation for violence and the Court assumed, without the necessity of prison records, that Williams reasonably perceived himself to be in danger.  [Record No. 64, p. 10]  Because Williams had interjected himself into the situation and escalated the conflict by introducing a weapon, however, only one level of reduction was appropriate.  *See id.* at 17.

The sentencing transcript indicates that counsel properly raised the section 5K2.10 motion and argued zealously on Williams' behalf.  As explained during the sentencing hearing, Williams' own actions weighed against a greater reduction under section 5K2.10.  While additional evidence of Kittle's propensity for violence may have existed, there is no indication that its absence prejudiced Williams in any way.

### D.      Diminished Mental Capacity

Williams also contends that counsel rendered ineffective assistance by failing to argue "mental diminished capacity in regards to [his] mental health history."  [Record No. 46, p. 13]  Specifically, Williams maintains that he has a history of being mentally impaired, suffering from attention deficit hyperactivity disorder ("ADHD"), stress, depression, and bipolar disorder.

As noted by the magistrate judge, Williams' mental health was addressed specifically during his plea colloquy.  [Record No. 70, p. 24]  Williams stated that he had been treated in the past for the conditions listed above, but that he stopped treatment on his own volition.  [Record No. 60, p. 7]  When asked about his most recent treatment for these problems, he reported that he "sat down" with a psychiatrist at USP Big Sandy in 2013.  *Id.*  Although Williams dropped out of school in the seventh grade, he reported being able to read and write well, and had held employment and participated in vocational training.  *Id.* at pp. 5, 10.

Additionally, Williams has not identified any evidence that suggests he had reduced mental capacity as defined by section 5K2.13 of the Sentencing Guidelines.  Under that policy statement, significantly reduced mental capacity means "the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the

defendant knows is wrongful." U.S.S.G. 5K2.13, App. Note. Williams does not provide evidence suggesting that he did not understand the wrongfulness of his actions or that he lacked the ability to control himself. Importantly, he does not even claim that either of these things is true. Counsel is not required to raise frivolous arguments to avoid a charge of ineffective representation. *See Krist v. Foltz*, 804 F.2d 944, 946–47 (6th Cir. 1986). Accordingly, the claim of ineffective assistance is without merit.

### III.    Due Process—Access to Law Library

Williams contends that during his pretrial detention, he was not given adequate access to a law library and, as a result, his due process rights were violated. Prior to his initial appearance and arraignment on August 22, 2014, Williams was appointed counsel under the Criminal Justice Act. *See* 18 U.S.C. § 3006A. The Sixth Circuit has held that, as long as a prisoner has the assistance of counsel during a criminal trial, he has access to the courts, and the denial of law library privileges does not violate due process. *See United States v. Manthey*, 92 F. App'x 291, 297 (6th Cir. 2004). *See also Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 104 (6th Cir. 1991). And as the magistrate judge previously noted, Williams testified under oath in open court that he was satisfied with the representation that his attorneys had provided him in this case. [Record No. 60, p. 14]

### IV.    *Brady* Claim

Williams contends in his reply brief that the United States withheld certain evidence in discovery—namely, a photograph of the weapon used in the attack and Kittle's "file." [Record No. 69] As an initial matter, Williams failed to raise this issue in his section 2255 motion and, thus, is barred from raising it now. *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010). Regardless, the argument is without merit.

- 8 -

Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), the government is required to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment. Williams has failed to explain how a photograph of the shank used in the stabbing fits either of these categories. Further, he has failed to sufficiently identify the "file" he believes should have been disclosed. Presumably Williams refers a disciplinary file on Kittle kept by the Bureau of Prisons. If so, such evidence would be cumulative for the reasons previously explained.

### V.    Request for the Appointment of Counsel and Evidentiary Hearing

Williams has requested an evidentiary hearing to "find out the truth from surveillance," to obtain Kamau Blakney's testimony, and to obtain post-altercation medical reports. [Record No. 71, p. 1]  In reviewing a motion under section 2255, no hearing is required when "the record conclusively shows that the petitioner is entitled to no relief." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). Where the petitioner's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts," no hearing is necessary. *Id.* Further, a party is entitled to discovery only upon a fact specific showing of good cause. Rules Governing § 2255 Cases, Rule 6(b). *See also Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). As previously discussed, Williams admitted under oath in open court that he intervened in a fight between Hopkins and Kittle and that he produced the shank he used to stab Kittle. There is no evidence to indicate otherwise and, therefore, no reason to conduct an evidentiary hearing.

Additionally, Williams' request for the appointment of counsel will be denied. The issues Williams has raised are straightforward and can be determined from the record. Neither due process nor the interests of justice require that Williams be appointed an attorney to

represent him for purposes of his section 2255 motion.  *See Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986).

## VI.   Certificate of Appealability

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 Proceedings, and 28 U.S.C. § 2253(c), the Court will deny a certificate of appealability.  Williams has failed to show that reasonable jurists would find this Court's "assessment of the constitutional claims debatable or wrong" or that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  *See also Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003).

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1.     The Magistrate Judge's Report and Recommendation [Record No. 70] is **ADOPTED** and **INCORPORATED** by reference.  Defendant/Movant Williams' objections to the Report and Recommendation [Record No. 71] are **OVERRULED**.

3.     Defendant/Movant Williams' motion to vacate under 28 U.S.C. § 2255 [Record No. 46] is **DENIED** and his claims are **DISMISSED**, with prejudice, and **STRICKEN** from the Court's docket.

4.     Williams' motion for an extension of time, for the appointment of counsel, and for an evidentiary hearing [Record No. 72] is **DENIED.**

5.     A Judgment in favor of the United States shall issue this date.

This 24th day of January, 2017.



Signed By:

**_Danny C. Reeves_**

**United States District Judge**